JSF PROMOTIONS, INC. *v.* ADMINISTRATOR,
UNEMPLOYMENT COMPENSATION ACT
(SC 16804)

Sullivan, C. J., and Borden, Norcott, Katz and Vertefeuille, Js.

Argued April 15—officially released August 12, 2003

*Richard T. Sponzo*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Thomas P. Clifford III*, assistant attorney general, for the appellant (defendant).

*George J. Kelly, Jr.*, with whom was *Glenn A. Duhl*, for the appellee (plaintiff).

*Bennett Pudlin* filed a brief for the intervening appellant (employment security board of review).

*Opinion*

SULLIVAN, C. J. The defendant, the administrator of the Unemployment Compensation Act, appeals[1] from the judgment of the trial court reversing the decision of the employment security board of review (board),[2] which had found the plaintiff, JSF Promotions, Inc. (JSF), liable for unemployment compensation contributions with regard to individuals recruited and assigned

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Pursuant to General Statutes § 31-249c, the board intervened as of right as a defendant in the present case.

by JSF to work as product demonstrators in supermarkets. We reverse the judgment of the trial court.

The opinion of the trial court sets out the following relevant facts and procedural history. "[JSF] operates a business providing individuals to demonstrate products of various manufacturers to consumers, primarily in supermarkets. [JSF] engages the services of these individuals, who will be referred to as 'demonstrators,' pursuant to contracts [JSF] has with the supermarkets and the demonstrators.

"Following an audit by the defendant . . . for the period January 1, 1993 to December 31, 1995, the auditor determined that the services performed by the demonstrators constituted employment within the meaning of General Statutes § 31-222 (a) (1) (B) (ii) and that [JSF] as the employer was, therefore, liable for contributions pursuant to the state Unemployment Compensation Act [(act), General Statutes § 31-222 et seq.]. The auditor's decision was dated July 9, 1996.

"[JSF] appealed from the auditor's decision. The appeal was heard by an appeals referee as a de novo proceeding. At the hearing, [JSF] appeared, represented by counsel, and presented testimony and other evidence through its president. The defendant administrator appeared and presented testimony of the auditor. Evidence presented by the parties included copies of the contracts [JSF] had with the demonstrators and with the supermarkets . . . as well as other evidence. Following the hearing, the referee determined that the services performed by [JSF's] demonstrators constituted employment for purposes of the act, essentially agreeing with the auditor's analysis. The referee's decision was dated July 30, 1997.

"[JSF] thereupon appealed from the referee's decision to the [board]. In its letter to the board requesting review of the referee's decision, dated August 20, 1997,

[JSF] set forth in detail why it disputed twenty-eight of the referee's findings of fact. The board reviewed the record, including the tape recording of the hearing before the referee and the referee's decision. The board adopted the referee's findings of fact, subject to four modifications . . . ."

Among the referee's findings, as modified upon their adoption by the board, were that "[JSF] engaged the services of individuals called demonstrators to hand out samples. The [d]emonstrators hand out food samples and coupons to store customers. . . . JSF has an arrangement with supermarkets . . . as to when and where the demonstrators' work needs to be performed. . . . JSF required the demonstrators to sign an [i]ndependent [c]ontractor [a]greement. The contract states that the demonstrators are not employees of [the supermarket] or JSF. . . . JSF would contact the demonstrators and advise the demonstrators of the time and place of the demonstrations. . . . JSF provides compensation to the demonstrators. . . . [The supermarket] does not set the pay rate for the demonstrators. JSF determines the rate of pay. . . . JSF did not provide any documentation that the demonstrators were in business for themselves. . . . The demonstrators do not have business card[s]. . . . In July, 1995, the [defendant] conducted a random audit on JSF. . . . [Field auditor] Lisa L. Chassee called nine demonstrators [and] she was able to talk to three of the demonstrators on June 10, 1996. . . . The three demonstrators did not contract with other entities to perform demonstrations but had signed a contract with JSF which stated that they were independent contractors." On the basis of these findings, the board determined that "[JSF] has failed to demonstrate that any of the individuals it engaged as demonstrators are customarily engaged in an independently established trade, occupation or business as demonstrators which exists separate and apart

from the relationship with [JSF], and which would survive the termination of that relationship . . . ." Accordingly, the board affirmed the decision of the referee.

JSF appealed from the decision of the board to the trial court, and that court reversed the decision of the board and rendered judgment sustaining JSF's appeal. In its appeal from the judgment of the trial court, the defendant claims that the trial court's conclusion that the services performed by the demonstrators were not "employment" within the meaning of § 31-222 (a) (1) (B) (ii) was based on an incorrect interpretation of that section.[3] We agree.

"[R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 343, 757 A.2d 561 (2000). "[A]n

[3] The defendant also claims that the trial court improperly relied on the demonstrators' failure to apply for unemployment benefits as evidence that they were not employees of JSF. The trial court did note, at the end of its memorandum of decision, that JSF's claim that none of the demonstrators had applied for unemployment benefits was undisputed. Earlier in that memorandum, however, following the court's application of the three prongs of the statutory test, the court stated that "[JSF] has satisfied the requirements of General Statutes § 31-322 (a) (1) (B) (ii) and, therefore, [JSF's] appeal must be sustained and the defendant's motion for judgment must be denied." We conclude that, in reaching its conclusion, the trial court did not rely on the demonstrators' failure to file for benefits. Therefore, we do not reach the issue of whether such reliance would have been proper.

agency's factual and discretionary determinations are to be accorded considerable weight by the courts." *Skindzier* v. *Commissioner of Social Services*, 258 Conn. 642, 647, 784 A.2d 323 (2001). "It is well settled [however] that we do not defer to the board's construction of a statute—a question of law—when, as in the present case, the [provision] at issue previously ha[s] not been subjected to judicial scrutiny or when the board's interpretation has not been time tested." *Rayhall* v. *Akim Co.*, 263 Conn. 328, 354, 819 A.2d 803 (2003). Whether the relationship between JSF and the demonstrators constituted "employment" within the meaning of § 31-222 (a) (1) (B) presents a question of statutory interpretation. Accordingly, our review is plenary. Id.

For purposes of the act, "employment" is defined in part by General Statutes § 31-222 (a) (1) (B) (ii), which provides in relevant part that "[s]ervice performed by an individual shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the administrator that (I) such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract for the performance of service and in fact; and (II) such service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and (III) such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed . . . ." This statutory provision is commonly referred to as the "ABC test," with parts A, B and C corresponding to clauses I, II and III, respectively. *Mattatuck Museum-Mattatuck Historical*

*Society* v. *Administrator, Unemployment Compensation Act*, 238 Conn. 273, 277–78, 679 A.2d 347 (1996).

This statutory provision is in the conjunctive. Accordingly, unless the party claiming the exception to the rule that service is employment shows that all three prongs of the test have been met, an employment relationship will be found. *Latimer* v. *Administrator, Unemployment Compensation Act*, 216 Conn. 237, 246–47, 579 A.2d 497 (1990). The trial court concluded that JSF had satisfied all three prongs of this test. The defendant on appeal challenges the trial court's conclusion only with regard to the third prong, part C of the test. We limit our review accordingly.

In reversing the decision of the board, the trial court did not disturb the board's findings of fact. The trial court instead concluded, as a matter of law, that the board had misinterpreted § 31-222 (a) (1) (B) (ii). The court reasoned that "the test is not what kind of work is involved or whether the demonstrator is simultaneously engaged in performing the same service for others. The essence of the part C test is whether the business is established independent of the relationship with [JSF] and would survive the termination of that relationship. In this regard, the contract between the demonstrators and [JSF] is highly significant. It provides that the demonstrator 'is NOT the exclusive agent of [JSF], and [the demonstrator] is free to contract for similar services to be performed for others.' . . . Plainly, an individual under this contract with [JSF] has established a business that is independent of his or her relationship with [JSF]. The demonstrator is free to work for a competitor of [JSF], or even compete directly, during the same period he or she is doing similar work under the contract with [JSF]. Just as obviously, that business would survive the cancellation of the demonstrator's contract with [JSF]. The determination by the board and the referee that [JSF] had not satisfied [the third prong]

was based on a misinterpretation of the statute relating to this issue. It was, therefore, in error and may not be sustained."

Thus, the trial court concluded that the third prong of the statutory test was satisfied by mere contractual freedom to establish a business or to perform similar work for other entities. That prong, however, requires that JSF prove that "such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed . . . ." General Statutes § 31-222 (a) (1) (B) (ii) (III). Simply stated, an individual who is *permitted* under a contract for services to establish a business or perform additional services for third parties does not necessarily do so.

Therefore, the existence of a contractual provision permitting the demonstrators in the present case to perform demonstration services for entities other than JSF does not necessarily mean that they have established businesses independent of their relationship with JSF. If the legislature had intended to exclude from the statutory definition of employment those workers who, in addition to satisfying the first two prongs of the test, are *free* to engage in an independently established trade, occupation, profession or business, but who have not done so customarily, it easily could have so provided. Accordingly, we conclude that the third prong is not satisfied merely because the individuals are free to establish businesses or to work for other entities.

To conclude otherwise would undermine the purpose of the statute, which is to protect those who are at risk of unemployment if their relationship with a particular employer is terminated. See *Daw's Critical Care Registry, Inc.* v. *Dept. of Labor*, 42 Conn. Sup. 376, 411, 622 A.2d 622 (1992), aff'd, 225 Conn. 99, 622 A.2d 518 (1993). The fact that, under their contract with JSF, the demon-

strators were permitted to engage in an independently established trade, occupation, profession or business does not demonstrate that they were "not at the economic risk of unemployment by the conduct of" JSF. Id.

Our conclusion is bolstered by the case law of other states interpreting unemployment compensation statutes that impose the same three-prong test. In a case involving individuals engaged to repossess automobiles and other vehicles, the Supreme Court of North Dakota has held that, to satisfy this prong, "it is not enough to show that the individuals are free to engage in similar activities for others or work as employees for others." *Midwest Property Recovery, Inc.* v. *Job Service of North Dakota*, 475 N.W.2d 918, 924 (N.D. 1991). Similarly, the Supreme Court of South Dakota has held that nurses and nurses' aides were not "customarily engaged in an independently established trade, occupation, profession or business"; *In the Matter of the Appeal of Hendrickson's Health Care Service*, 462 N.W.2d 655, 659 (S.D. 1990); although they were "not restricted by [their contract with the employer at issue] from engaging in outside employment, including private nursing"; id., 657; and at least one did perform such services for another employer during her engagement with the employer at issue in that case. Id. The Court of Appeals of Utah also has rejected an employer's claim that the fact that its nurses were licensed conclusively established that they were customarily engaged in an independently established trade, occupation, profession or business, because their licenses rendered them capable of performing similar services for others, even if they did not in fact do so. *McGuire* v. *Dept. of Employment Security*, 768 P.2d 985, 987–88 (Utah App. 1989). The court concluded that "the appropriate inquiry under part (C) is whether the person engaged in covered employment actually has such an independent business,

occupation, or profession, not whether he or she could have one." Id., 988.

JSF also asserts that, contrary to the finding of the board, "the record establishes that the demonstrators provide the same kind of services, through other demonstration companies, that they provide to the stores services by JSF," and that, therefore, it has satisfied the third prong of the statutory test. We conclude, however, that the board's factual findings are not subject to further review by this court or by the trial court. Practice Book § 22-4 provides in relevant part that "[i]f the appellant desires to have the finding of the [employment security board of review] corrected he or she must, within two weeks after the record has been filed in the superior court, unless the time is extended for cause by the board, file with the board a motion for the correction of the finding . . . ." JSF appealed from the decision of the board to the trial court on December 1, 1997. On December 5, 1997, JSF filed with the trial court a certified copy of the record before the board. On March 23, 2000, JSF filed with the board a motion to correct the factual findings adopted by that board. In that motion, JSF did not claim that the motion was timely or that cause existed for which the board should extend the deadline for filing the motion. In a decision dated April 12, 2000, the board denied the motion as untimely.

Although JSF did not claim that the board improperly had denied that motion, the trial court nonetheless affirmed the board's denial of the motion, concluding that the board properly had concluded that the motion was untimely and that JSF had made no showing of good cause for which its untimeliness should be excused. This conclusion has not been challenged on appeal. JSF's failure to file a timely motion for correction of the board's findings in accordance with § 22-4 prevents further review of those facts found by the board. See *Chavez* v. *Administrator, Unemployment*

*Compensation Act,* 44 Conn. App. 105, 106–107, 686 A.2d 1014 (1997); *Calnan* v. *Administrator, Unemployment Compensation Act,* 43 Conn. App. 779, 783–85, 686 A.2d 134 (1996).

We conclude that, in the present case, the board applied the correct legal standard in its determination that JSF had failed to establish that its relationship with the demonstrators did not constitute employment within the meaning of § 31-222 (a) (1) (B) (ii). We further conclude that the board's findings of fact in support of its determination are not subject to further review. Accordingly, the trial court improperly sustained JSF's appeal.

The judgment of the trial court is reversed and the case is remanded to that court with direction to dismiss JSF's appeal.

In this opinion the other justices concurred.