PALMER, J.
**41 The issue that we must resolve in these appeals is whether certain individuals who have engaged in door-to-door sales of vacuums provided by the plaintiff, Kirby of Norwich, also known as GP Industries of Norwich, Inc., should be classified as independent contractors or, instead, as employees of the plaintiff for purposes of the Unemployment Compensation Act (act), General Statutes § 31-222 et seq. The named defendant, the Unemployment Compensation Act Administrator (administrator), *1183 found that there was an employer-employee relationship between the plaintiff and those individuals, thereby obligating the plaintiff to contribute to the state's unemployment compensation fund (fund),[1] because the plaintiff failed to meet its burden of satisfying the requirements of all three prongs of the ABC test, codified at **42 General Statutes § 31-222 (a) (1) (B) (ii) (I), (II) and (III),[2] with parts A, B and C of the test corresponding to clauses (I), (II) and (III), respectively, of that statutory provision. After the administrator's decisions were sustained by the Employment Security Appeals Division (appeals division) and the defendant Employment Security Board of Review (board), the plaintiff appealed to the trial court, which agreed with the administrator in three separate cases that such individuals are the plaintiff's employees on the ground that the plaintiff failed to establish that the individuals are "customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed" for the plaintiff, within the meaning of part C of the ABC test. See General Statutes § 31-222 (a) (1) (B) (ii) (III). The plaintiff now appeals from the judgments of the trial court, claiming that the court in each case interpreted § 31-222 (a) (1) (B) (ii) (III) too narrowly and, as a result, incorrectly concluded that the individuals engaged in door-to-door sales of the plaintiff's product were employees of the plaintiff rather than independent contractors. We affirm the judgments of the trial court.
The record reveals the following relevant facts[3] and procedural history. The plaintiff is in the business of **43 selling Kirby vacuums to consumers. Its sales force consists of door-to-door sales representatives who sell the vacuums exclusively by performing demonstrations in the homes of potential customers. The plaintiff provides its sales representatives with leads, makes appointments with customers on their behalf, and provides them with nonmandatory training.
In Docket No. SC 19825, the administrator determined that the plaintiff had an employer-employee relationship with one of its sales representatives, the defendant Bryant Gardner, and was therefore liable to make contributions to the fund. The administrator determined that the plaintiff *1184 had failed to establish any of the three requirements of the ABC test, which, as we previously explained, are set forth in clauses (I), (II) and (III) of § 31-222 (a) (1) (B) (ii). See footnote 2 of this opinion. The plaintiff appealed from this decision to the appeals division. An appeals referee conducted an evidentiary hearing, at which the plaintiff's president, Vess Zaprianov, testified that Gardner independently sold cell phones while he was engaged as a vacuum sales representative for the plaintiff. The appeals division sustained the decision of the administrator on the ground that the plaintiff had failed to establish the criteria set forth in any of the three prongs of the ABC test.
The plaintiff then appealed from the appeals division's decision to the board. The board concluded that, although the plaintiff had established that Gardner had sold cell phones during the course of his work relationship with the plaintiff, the plaintiff had provided "no evidence that [Gardner] was engaged in the independent sale of vacuum[s] ... before, during or after his relationship with the [plaintiff]" and, therefore, that it had failed to establish that Gardner was "customarily engaged in an independently established ... business of the same nature as that of the service performed," as required by part C of the ABC test. (Internal quotation **44 marks omitted.) The board did not address the first two prongs of the ABC test. The plaintiff appealed from the board's decision to the trial court. The trial court, Hon. Seymour L. Hendel , judge trial referee, agreed with the board that the requirements of part C were not satisfied because the plaintiff had presented no evidence to establish that Gardner was engaged in an independent vacuum sales business, and the court rendered judgment dismissing the plaintiff's appeal.
In Docket No. SC 19826, the administrator determined that the plaintiff had an employer-employee relationship with its sales representative, the defendant Rick Magee. The plaintiff appealed from this decision to the appeals division. An appeals referee conducted an evidentiary hearing, at which Zaprianov testified that Magee worked at a church. The appeals division sustained the administrator's decison on the ground that the plaintiff had failed to establish the criteria set forth in any of the three prongs of the ABC test.
The plaintiff then appealed from the decision of the appeals division to the board. The board concluded that the plaintiff had provided "no evidence that [Magee] was engaged in the independent sale of vacuum[s] ... before, during or after his relationship with the [plaintiff]" and, therefore, that it had failed to establish that Magee was "customarily engaged in an independently established ... business of the same nature as that of the service performed," as required by part C of the ABC test. (Internal quotation marks omitted.) Again, the board did not address the first two prongs of the ABC test. The plaintiff appealed from the board's decision to the trial court, Hon. Seymour L. Hendel , judge trial referee. As in the case involving Gardner, Judge Hendel agreed with the board that the requirements of part C were not satisfied because the plaintiff had presented no evidence to establish that Magee was **45 engaged in an independent vacuum sales business, and rendered judgment dismissing the plaintiff's appeal.[4]
In Docket No. SC 19827, the administrator conducted an audit of the plaintiff's business and concluded that the plaintiff's *1185 entire sales force should be classified as employees for purposes of the act. The plaintiff appealed from this determination to the appeals division. An appeals referee conducted an evidentiary hearing, at which the plaintiff presented evidence that many of the plaintiff's sales representatives sold vacuums for only a very short time period. Specifically, according to the plaintiff, the evidence showed that, out of a total of 378 sales representatives who worked for the plaintiff between 2012 and 2014, 194 worked for only one week and 104 worked for between two weeks and one month. The appeals referee sustained the administrator's determination on the ground that the plaintiff had failed to establish the criteria set forth in any of the three prongs of the ABC test.
The plaintiff then appealed from the decision of the appeals division to the board. The board concluded that the plaintiff had "failed to present any evidence, such as business cards, advertisements or web sites, to show that any of the individuals in question were 'customarily engaged' in a business of the same nature as the [plaintiff]," as required by part C of the ABC test. Again, the board did not address the first two prongs of the test. The plaintiff appealed to the trial court. The court, Hon. Robert C. Leuba , judge trial referee, concluded that "the record is replete with evidence to support the conclusion of the board that an employer-employee relationship existed" and dismissed the plaintiff's appeal.
Thereafter, the plaintiff filed a motion for articulation of the factual and legal bases for Judge Leuba's decision.
**46 In response, Judge Leuba issued an articulation in which he explained that, to meet the requirements of part C of the ABC test, the plaintiff bore "the burden of maintaining that its sales persons were customarily engaged as independently established sellers of vacuum [s] ...." Because it had failed to do so, Judge Leuba concluded that the board properly determined that the sales representatives were employees.
The plaintiff then filed the present appeals,[5] which were subsequently consolidated for purposes of argument and briefing.[6] The plaintiff claims that, in each case, the trial court[7] incorrectly upheld the board's unduly narrow interpretation of part C of the ABC test. Specifically, the plaintiff contends that part C was satisfied because the plaintiff's sales representatives have an occupation or calling of the same nature as that involved in the service performed for the plaintiff that they can pursue after terminating their services to the plaintiff, and the plaintiff was not required to establish that the sales representatives actually independently engaged in that occupation or calling while providing services to the plaintiff. We conclude that, because the plaintiff presented no evidence that its sales representatives were "customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed" for the plaintiff during their relationship with the *1186 plaintiff; **47 General Statutes § 31-222 (a) (1) (B) (ii) (III) ; the trial court correctly concluded that the plaintiff had not established the requirements of part C and properly dismissed the plaintiff's appeals.
We begin our analysis with the standard of review. The proper interpretation of § 31-222 (a) (1) (B) (ii) (III) presents a question of law. See, e.g., JSF Promotions, Inc. v. Administrator, Unemployment Compensation Act , 265 Conn. 413, 418, 828 A.2d 609 (2003). Although "[o]ur review of an agency's decision on questions of law is limited by the traditional deference that we have accorded to that agency's interpretation of the acts [that] it is charged with enforcing"; (internal quotation marks omitted) Church Homes, Inc. v. Administrator, Unemployment Compensation Act , 250 Conn. 297, 303, 735 A.2d 805 (1999) ; "[i]t is well settled ... that we do not defer to the board's construction of a statute ... when ... the [provision] at issue previously ha[s] not been subjected to judicial scrutiny or when the board's interpretation has not been time tested." (Internal quotation marks omitted.) JSF Promotions, Inc. v. Administrator, Unemployment Compensation Act , supra, at 418, 828 A.2d 609. Because the administrator[8] has neither expressly claimed nor demonstrated that the board's interpretation of § 31-222 (a) (1) (B) (ii) (III), as applied to the facts of these cases, is time tested or that its interpretation previously has been subject to judicial scrutiny, our review is plenary. See, e.g., Southwest Appraisal Group, LLC v. Administrator, Unemployment Compensation Act , 324 Conn. 822, 838 n.10, 155 A.3d 738 (2017) (rejecting claim of administrator that board's interpretation of part C of ABC test was time tested in light of "fact sensitivity" of board's decisions).
For purposes of the act, "employment" is defined by § 31-222 (a) (1) (B) (ii), which provides in relevant part **48 that "[s]ervice performed by an individual shall be deemed to be employment subject to [the act] irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the administrator that (I) such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract for the performance of service and in fact; and (II) such service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and (III) such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed ...." Because this statutory provision is in the conjunctive, "unless the party claiming the exception to the rule that service is employment shows that all three prongs of the test have been met, an employment relationship will be found." JSF Promotions, Inc. v. Administrator, Unemployment Compensation Act , supra, 265 Conn. at 419, 828 A.2d 609.
It is well established that, "[w]hen interpreting provisions of the act, we take as our starting point the fact that the act is remedial and, consequently, should be liberally construed in favor of its beneficiaries.... Indeed, the legislature underscored its intent by expressly mandating that the act shall be construed, interpreted and administered in such [a] manner as to presume coverage, eligibility and nondisqualification in doubtful cases. General Statutes § 31-274 (c).... We also *1187 note that exemptions to statutes are to be strictly construed." (Citation omitted; internal quotation marks omitted.) Standard Oil of Connecticut, Inc. v. Administrator, Unemployment Compensation Act , 320 Conn. 611, 616, 134 A.3d 581 (2016). **49 This is not the first time that we have had occasion to consider the scope of part C of the ABC test. In JSF Promotions, Inc. v. Administrator, Unemployment Compensation Act , supra, 265 Conn. at 413, 828 A.2d 609, the plaintiff, JSF Promotions, Inc. (JSF), "operate[d] a business providing individuals to demonstrate products of various manufacturers to consumers, primarily in supermarkets." (Internal quotation marks omitted.) Id., at 415, 828 A.2d 609. Following an audit by the administrator, it was determined that the demonstrators were employees for purposes of the act. See id. JSF appealed from this determination to the appeals division, which agreed with the administrator's determination. See id. JSF then appealed to the board, which upheld the decision of the appeals division. See id., at 415-17, 828 A.2d 609. JSF appealed from board's decision to the trial court, which reversed the board's decision. Id., at 417, 828 A.2d 609. The trial court concluded that, because the demonstrators were "free to work for a competitor of [JSF], or even [to] compete directly, during the same period [that they were] doing similar work ... [for JSF]"; (internal quotation marks omitted) id., at 419, 828 A.2d 609 ; the requirements of part C of the ABC test were met. Id., at 420, 828 A.2d 609.
The administrator then appealed. Id., at 417, 828 A.2d 609. We observed that part C required the plaintiff to prove that the individuals in question were "customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed ...." (Internal quotation marks omitted.) Id., at 418, 828 A.2d 609. We then concluded that this requirement was not satisfied when the individuals were "free to engage in an independently established trade, occupation, profession or business, but ... [had] not done so customarily ...." (Emphasis in original.) Id., at 420, 828 A.2d 609. We also quoted with approval the holding of the court in McGuire v. Dept. of Employment Security , 768 P.2d 985, 988 (Utah App.), cert. denied, **50 109 Utah Adv. 39 (1989), that "the appropriate inquiry under part [C] is whether the person engaged in covered employment actually has such an independent business, occupation, or profession, not whether he or she could have one." (Internal quotation marks omitted.) JSF Promotions, Inc. v. Administrator, Unemployment Compensation Act , supra, 265 Conn. at 421-22, 828 A.2d 609. We reasoned that "[t]o conclude otherwise would undermine the purpose of the [act], which is to protect those who are at risk of unemployment if their relationship with a particular employer is terminated." Id., at 420, 828 A.2d 609.
In Southwest Appraisal Group, LLC v. Administrator, Unemployment Compensation Act , supra, 324 Conn. at 822, 155 A.3d 738, however, we clarified that, under our decision in JSF Promotions, Inc. , a putative employer is not always required to present "evidence of the performance of services for third parties ... to prove part C of the ABC test ...." Id., at 825, 155 A.3d 738. Rather, such evidence "is a single factor that may be considered under the totality of the circumstances analysis governing that inquiry." Id. ; see also id., at 831-82, 155 A.3d 738 (under JSF Promotions, Inc. , "a putative employee's work for other entities is a relevant, but not dispositive, factor in the totality of the circumstances analysis that governs the relevant inquiry under part *1188 C").[9] "This totality of the **51 circumstances test ... evaluates the dynamics of the relationship between the putative employee and the employer; there is no dispositive single factor or set of factors." (Internal quotation marks omitted.) Id., at 839, 155 A.3d 738. In addition to the fact that a putative employee actually performed work of the same nature for third parties, factors that may be relevant when determining whether part C is satisfied include, but are not limited to, the fact that the putative employee maintained a home office, that he was independently licensed by the state, that he had business cards, that he sought similar work from third parties, that he maintained his own liability insurance, and that he advertised his services to third parties. See id., at 827, 839-40, 155 A.3d 738.
In the present case, the plaintiff presented no evidence that any of these factors existed with respect to any of its sales representatives.[10] We must conclude, therefore, that the trial court properly determined that the plaintiff had not established part C of the ABC test.
In support of its claim to the contrary, the plaintiff cites to this court's decision in Electrolux Corp. v. Danaher , 128 Conn. 342, 23 A.2d 135 (1941), in which **52 we concluded that the trial court properly had determined that the sales representatives of the plaintiff in that case, Electrolux Corporation (Electrolux), which sold vacuums door-to-door, were not Electrolux' employees for purposes of the then existing Unemployment Compensation Act, General Statutes (Supp. 1939) § 1334e (a) (1); see id., at 347, 349-51, 23 A.2d 135 ; but were "engaged in an independent calling ...." Id., at 349, 23 A.2d 135. The plaintiff in the present case contends that, because it has the same relationship with *1189 its sales representatives that Electrolux had with its sales representatives, that case controls the outcome in the present case. The plaintiff fails to recognize, however, that, in Electrolux Corp. , the sole issue presented was whether, under the common law, the relationship between Electrolux and its sales representatives was that of master and servant; see id., at 347, 23 A.2d 135 ; which turned on whether Electrolux had "the right of general control over the means and methods ... of the sales representatives ...." Id., at 349, 23 A.2d 135, citing Robert C. Buell & Co. v. Danaher , 127 Conn. 606, 610, 18 A.2d 697 (1941) ("[t]he fundamental distinction between an employee and an independent contractor depends [on] the existence or nonexistence of the right to control the means and methods of work" [internal quotation marks omitted] ); Beaverdale Memorial Park, Inc. v. Danaher , 127 Conn. 175, 179, 15 A.2d 17 (1940) (same); Jack & Jill, Inc. v. Tone , 126 Conn. 114, 119, 9 A.2d 497 (1939) ("[t]he controlling consideration in the determination [of] whether ... the relationship of master and servant exists, or that of [an] independent contractor, is ... [whether] the employer [has] the general authority to direct what shall be done and when and how it shall be done-the right of general control of the work" [internal quotation marks omitted] ); Northwestern Mutual Life Ins. Co. v. Tone , 125 Conn. 183, 191, 4 A.2d 640 (1939) ("[i]n many instances the decisive factor in determining whether one who **53 performs services for another is a servant or is exercising an independent employment is the right of control [that] the former has over the other, the right to direct what shall be done and when and how it shall be done ... the right to the general control" [internal quotation marks omitted] ). The legislature amended the act in 1971, however, to include the ABC test. See, e.g., F.A.S. International, Inc. v. Reilly , 179 Conn. 507, 511, 427 A.2d 392 (1980) ("[i]n addition to codifying the common-law rules applicable to determine the existence of an employer-employee relationship, the act was amended in 1971 to include the so-called ABC test" [internal quotation marks omitted] ). Thus, "under [current] Connecticut law, service may be employment and [an individual] may be an employee even if the common-law relationship of master and servant does not exist," if the putative employer fails to establish all three prongs of the ABC test. Id. In other words, under current law, even if a putative employer establishes under the common-law test for employment, which is now contained in part A of the ABC test, that the putative employee is not under its control and direction, if the putative employer fails to establish part C, it will still be liable under the act. Although Electrolux Corp. continues to be good law, the case provides guidance only with respect to part A of the ABC test, and is not controlling when part C of the test is at issue.
The plaintiff also contends that Daw's Critical Care Registry, Inc. v. Dept. of Labor , 42 Conn. Supp. 376, 622 A.2d 622 (1992), aff'd, 225 Conn. 99, 622 A.2d 518 (1993), and F.A.S. International, Inc. v. Reilly , supra, 179 Conn. at 507, 427 A.2d 392, support its position. These cases, however, are readily distinguishable. In Daw's Critical Care Registry, Inc. , the trial court found, in a decision that this court later adopted; Daw's Critical Care Registry, Inc. v. Dept. of Labor , supra, 225 Conn. at 102, 622 A.2d 518 ; that part C was satisfied because a large majority of the putative **54 employees-nurses who performed services that were arranged by the plaintiff-"worked for other agencies at other medical facilities performing similar services while also working on assignments [for the plaintiff]." Daw's Critical Care Registry, Inc. v. Dept. of Labor , supra, 42 Conn. Supp. at 408, 622 A.2d 622. In F.A.S. International, Inc. , we concluded that part C *1190 was satisfied because the evidence showed that the putative employees-artists, writers and photographers who analyzed and corrected the work of the correspondence students of the plaintiff, F.A.S. International, Inc.-"did [freelance] work ... for others as well as for F.A.S. [International, Inc.] when work was available." F.A.S. International, Inc. v. Reilly , supra, at 510, 427 A.2d 392. Thus, unlike in the present case, in both of the foregoing cases, there was evidence to support the conclusion that the putative employees "customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed," as required by part C of the ABC test.[11] General Statutes § 31-222 (a) (1) (B) (ii) (III).
The plaintiff further contends that we should reconsider and overrule our holding in JSF Promotions, Inc. that part C is satisfied only if the putative employee is actually "engaged in an independently established **55 trade, occupation, profession or business of the same nature as that involved in the service performed"; (internal quotation marks omitted) JSF Promotions, Inc. v. Administrator, Unemployment Compensation Act , supra, 265 Conn. at 420, 828 A.2d 609 ; and not if the putative employee is merely free to engage in an independent occupation, because the interpretation is unworkable and leads to absurd results. Specifically, the plaintiff contends that, under this interpretation, a business owner must monitor its sales representatives constantly to determine if they are engaged in independently established occupations, it is illogical to treat employees who are performing identical work differently depending on whether they are engaged in independently established occupations, and it is illogical to treat an individual worker as an independent contractor if the worker is engaged in an independently established occupation when hired but then to treat him as an employee if he later decides to work exclusively for the putative employer. The plaintiff also contends that this interpretation has a negative effect on the freedom of workers to decide how they wish to earn a living because businesses will be discouraged from hiring workers who have a job in another field and who wish to work only part-time or for a short period to supplement their income.
In support of this contention, the plaintiff relies on our decision in Standard Oil of Connecticut, Inc. v. Administrator, Unemployment Compensation Act , supra, 320 Conn. at 611, 134 A.3d 581, in which we cautioned against interpreting the act too liberally in favor of coverage merely because it is remedial legislation. See id., at 657-58, 134 A.3d 581. We stated in that case that "[n]o legislation pursues its purposes at all costs." (Internal quotation marks omitted.) Id., at 657, 134 A.3d 581. Rather, remedial statutes "achieve a particular amount of [their] objective, at a *1191 particular cost [to] other interests. An agency cannot treat a statute **56 as authorizing an indefinite march in a single direction.... Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice-and it frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law." (Internal quotation marks omitted.) Id., at 657-58, 134 A.3d 581.
The plaintiff also relies on the decisions of several of our sister states that support the proposition that part C is satisfied if the putative employee is free to engage in an independently established occupation, even if the putative employee does not actually do so. See Commissioner of Unemployment Assistance v. Town Taxi of Cape Cod, Inc. , 68 Mass. App. 426, 432, 862 N.E.2d 430 (2007) (finding that taxi drivers were independent contractors because they were free to operate their own taxi services, to drive for another service, to find customers on their own, and to engage in other employment or to generate their own business while using taxis leased from putative employer); see also Athol Daily News v. Board of Review of the Division of Employment & Training , 439 Mass. 171, 181, 786 N.E.2d 365 (2003) ("[t]he better approach to the evaluation required by part [C] is to consider whether the service in question could be viewed as an independent trade or business because the worker is capable of performing the service [for] anyone wishing to avail [himself or herself] of the services or, conversely, whether the nature of the business compels the worker to depend on a single employer for the continuation of the services"); Trauma Nurses, Inc. v. Board of Review , 242 N.J. Super. 135, 148, 576 A.2d 285 (App. Div. 1990) (finding that nurses are independent contractors for employment broker because they were "able to obtain positions either as full-time employees, part-time employees, independent contractors, shift workers, **57 etc."); Beare Co. v. State , 814 S.W.2d 715, 720 (Tenn. 1991) (finding that putative employees were independent contractors because they were free to work at other businesses without interference from putative employer).[12]
Although we recognize the appeal of the plaintiff's arguments, we are not persuaded that we should overrule JSF Promotions, Inc. We acknowledge that a narrow interpretation of part C of the ABC test imposes significant burdens on businesses, like the plaintiff, which rely primarily or significantly on short-term or part-time workers who operate outside of the businesses' direction and control, and outside their places of business. To adopt the plaintiff's interpretation of part C, however, would require us to write the provision entirely out of § 31-222 (a) (1) (B) (ii).[13] Any worker who provides services to a business necessarily has a *1192 "trade, occupation, profession or business" that the worker would be free to engage in at some point for another similar entity after his relationship with the business has terminated. If evidence that the worker is actually performing those services for another entity during its relationship with the putative employer were not required, part C would be rendered meaningless. **58 We will not interpret the ABC test in such a manner.[14] Although we are sympathetic to the plaintiff's claim that part C creates certain, undesirable practical consequences as applied to the specific facts and circumstances of this case, any decision to alter or modify part C on the basis of a determination that, under such facts and circumstances, its costs outweigh its benefits must be made by the legislature, not this court.[15] **59 *1193 We conclude that the trial court correctly determined that the plaintiff had failed to establish part C of the ABC test because it presented no evidence that its sales representatives are "customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed ...." General Statutes § 31-222 (a) (1) (B) (ii) (III). Accordingly, we agree with the administrator **60 that the trial court properly dismissed the plaintiff's appeals.
The judgments are affirmed.
In this opinion the other justices concurred.

See General Statutes § 31-225 (a) ("Each contributing employer who is subject to [the act] shall pay to the administrator contributions, which shall not be deducted or deductible from wages, at a rate which is established and adjusted in accordance with the provisions of section 31-225a, stated as a percentage of the wages paid by said employer with respect to employment. In no event shall any employer be required to pay contributions on any amount of wages for which said employer has previously paid contributions.").

General Statutes § 31-222 (a) (1) (B) (ii) provides in relevant part: "Service performed by an individual shall be deemed to be employment subject to [the act] irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the administrator that (I) such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract for the performance of service and in fact; and (II) such service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and (III) such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed ...."

The facts pertinent to our resolution of these appeals generally are not in dispute. To the extent that any of them may have been disputed in the trial court, however, the following statement of the facts is predicated on findings by the trial court that have not been challenged on appeal.

Because the facts of Magee's case were so similar to those of Gardner's case, Judge Hendel consolidated the two appeals and issued a single memorandum of decision addressing both appeals.

The plaintiff appealed from the judgments of the trial courts to the Appellate Court, and we transferred the appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1 or 65-2.

After these appeals were filed, this court granted permission to the Direct Selling Association to file an amicus curiae brief in support of the plaintiff's position.

Because all three appeals involve the same issue, and because Judges Hendel and Leuba engaged in the same analysis and reasoning in reaching their respective decisions, we hereinafter refer collectively to Judges Hendel and Leuba as the trial court.

The administrator is the sole defendant participating in these appeals.

We explained in Southwest Appraisal Group, LLC , however, that "[o]ur conclusion in JSF Promotions, Inc. , was wholly consistent with the factual records considered in this court's previous part C jurisprudence. See F.A.S. International, Inc. v. Reilly , [179 Conn. 507, 514-15 and n.6, 427 A.2d 392 (1980) ] (holding that art school satisfied part C with proof that artists, writers, and photographers who reviewed work of its students practiced their artistic professions elsewhere independently of school, in contrast to delivery person in Rozran v. Durkin , 381 Ill. 97, 105, 45 N.E.2d 180 [1942], with essentially full-time schedule, with no discussion of financial viability of artists' careers beyond their adjunct work for school or other indicia of independent businesses); Daw's Critical Care Registry, Inc. v. Dept. of Labor , [42 Conn. Supp. 376, 410-11, 622 A.2d 622 (1992), aff'd, 225 Conn. 99, 622 A.2d 518 (1993) ] (holding [that] part C [was] satisfied with respect to licensed nurses who received assignments from referral service, and relying on their performance of assignments for other medical facilities while working for plaintiff, to reject argument that nurses needed 'a saleable business before they could be considered customarily engaged in an independently established profession' ...)." Southwest Appraisal Group, LLC , v. Administrator, Unemployment Compensation Act , supra, 324 Conn. at 837 n.8, 155 A.3d 738.

We recognize that there was evidence that Gardner had "sold cell phones" during his relationship with the plaintiff. There is no evidence, however, as to the manner in which Gardner sold cell phones, that is, whether he was a retail sales clerk, a telemarketer or a door-to-door salesman, or whether he sold the phones by some other method. In the absence of any such evidence, or other indicia that he had an independent occupation, we cannot conclude that Gardner was engaged independently in a business of the same nature as the service that he performed for the plaintiff. Because there is no evidence that any of the plaintiff's sales representatives engaged independently in door-to-door sales of any type of product, or that they engaged in a similar type of activity, we need not decide in the present case whether part C of the ABC test required the plaintiff to demonstrate that the sales representatives engaged independently in door-to-door sales of vacuums , and not some other product, as the trial court concluded.

The plaintiff contends that the fact that the putative employees in F.A.S. International, Inc. , were providing teaching services for the putative employer while they were engaging in freelance work as artists, writers and photographers for third parties, indicates that putative employees do not have to be performing the same type of work for third parties that they are performing for the putative employer to satisfy part C. Rather, the plaintiff contends, the fact that putative employees have an independent calling that they can pursue after terminating their relationship with the putative employer is sufficient to satisfy the requirements of part C. The trial court in F.A.S. International, Inc. , expressly found, however, that the putative employees in that case were not acting as teachers when they evaluated the work of the plaintiff's correspondence students; F.A.S. International, Inc. v. Reilly , supra, 179 Conn. at 514, 427 A.2d 392 ; but were "practicing elements of their chosen professions as artists, writers and photographers." Id., at 515, 427 A.2d 392.

In addition, the amicus curiae, Direct Selling Association, cites to Sarah Coventry, Inc. v. Caldwell , 243 Ga. 429, 434, 254 S.E.2d 375 (1979) (evidence that putative employee was free to sell products of companies other than those of putative employer and that he had intermittent and casual relationship with putative employer were sufficient to satisfy part C of Georgia's analogue to ABC test).

In contrast, our holding in Standard Oil of Connecticut, Inc. v. Administrator, Unemployment Compensation Act , supra, 320 Conn. at 655-56, 134 A.3d 581, that "undesirable, practical consequences" would follow from a broad interpretation of the phrase " 'places of business' " to include the homes of the putative employer's residential customers for purposes of part B of the ABC test did not effectively eliminate that provision from § 31-222 (a) (1) (B) (ii). Thus, that case does not support the proposition that a court may entirely ignore the language of a statutory provision if, in the court's view, the provision has undesirable policy consequences.

As the administrator notes, our reasoning and interpretation of part C of the ABC test finds support in the decisions of several of our sister states. See, e.g., Hart v. Johnson , 68 Ill.App.3d 968, 976, 25 Ill.Dec. 352, 386 N.E.2d 623 (1979) (putative employer failed to establish that door-to-door vacuum salespersons satisfied third requirement of Illinois' analogue to ABC test because "the [Illinois Unemployment Insurance Act] contemplates that one who is engaged in an independent enterprise is an individual who has a proprietary interest in such business to the extent that he can operate [the] same without hindrance from any individual," and, "[a]lthough [the putative employer] urge[d] that the individuals were free to carry other lines [of vacuums] ... there [was] no evidence that any of the individuals did so." [internal quotation marks omitted] ); Boston Bicycle Couriers, Inc. v. Deputy Director of the Division of Employment & Training , 56 Mass. App. 473, 481, 778 N.E.2d 964 (2002) (finding that worker was employee when putative employer failed to prove that worker "performed other courier delivery services on his own behalf that were completely apart from those performed for [the putative employer], and that this other separate courier delivery work exhibited economic independence such that [the worker's] business would continue as an ongoing enterprise, notwithstanding the end of work for [the putative employer]"); Herron Enterprises, Inc. v. Labor & Industrial Relations Commission , 765 S.W.2d 614, 617 (Mo. App. 1988) (door-to-door vacuum salespersons did not satisfy last part of Missouri's analogue to ABC test because "[their] opportunity to sell [the vacuums] was totally dependent on their relationship with [the putative employer]"); Carpet Remnant Warehouse, Inc. v. New Jersey Dept. of Labor , 125 N.J. 567, 592-93, 593 A.2d 1177 (1991) (evidence that "carpet installers generally provide[d] services for several retailers and [were] not financially dependent on one retailer ... [was] not sufficient to satisfy the C criterion" of New Jersey's analogue to ABC test, and putative employer was required to present evidence of "installers' ability to maintain an independent business or trade, including the duration and strength of the installers' businesses, the number of customers and their respective volume of business, the number of employees, and the extent of the installer's tools, equipment, vehicles, and similar resources").

We acknowledge, as the amicus curiae, Direct Selling Association, observes, that a number of states have enacted statutes exempting direct sellers from the requirements of their unemployment compensation laws. See Ala. Code § 25-4-10 (b) (23) (2007) ; Alaska Stat. § 23.20.526 (a) (21) (2012) ; Ariz. Rev. Stat. Ann. § 23-617 (22) (Supp. 2016) (exempts direct sales in homes when compensation includes commissions); Cal. Unemp. Ins. Code § 650 (Deering 2009); Colo. Rev. Stat. § 8-70-136 (2017) ; Del. Code Ann. tit. 19, § 3302 (11) (N) (2005); Fla. Stat. Ann. § 443.1216 (13) (u) (West Supp. 2017) ; Ga. Code Ann. § 34-8-35 (n) (18) (2017); Haw. Rev. Stat. § 383-7 (21) (2015); 820 Ill. Comp. Stat. Ann. 405/217 (b) (West 2011); Iowa Code Ann. § 96.19 (18) (g) (9) (b) (West Supp. 2017); Kan. Stat. Ann. § 44-703 (i) (4) (V) (Supp. 2016); La. Stat. Ann. § 23:1472 (12) (H) (XVIII) (Supp. 2017); Me. Rev. Stat. Ann. tit. 26, § 1043 (11) (F) (28) (West Supp. 2016) ; Md. Code Ann., Lab. & Empl. § 8-206 (b) (2016); Mich. Comp. Laws Serv. § 421.43 (r) and (s) (LexisNexis Cum. Supp. 2017); Minn. Stat. § 268.035 20(29) (2016); Miss. Code Ann. § 71-5-11 (I) (15) (p) (Cum. Supp. 2017); Mo. Ann. Stat. § 288.034 12(17) (West 2014); Mont. Code Ann. § 39-51-204 (1) (h) (2015); Neb. Rev. Stat. § 48-604 (6) (t) (Cum. Supp. 2016); Nev. Rev. Stat. § 612.144 (2015); N.H. Rev. Stat. Ann. § 282-A:9 (IV) (s) (Cum. Supp. 2016); N.J. Stat. Ann. § 43:21-19 (i) (7) (O ) (West 2015) (exempts "home-to-home salespersons" or "in-the-home demonstrators" who are paid by commissions or commissions and bonuses); Okla. Stat. Ann. tit. 40, § 1-210 (15) (k) (West 2014) (applicable only to delivery and distribution of newspapers and shopping news); S.C. Code Ann. § 41-27-260 (18) (Supp. 2017); Tenn. Code Ann. § 50-7-207 (c) (12) (2014); Tex. Lab. Code Ann. § 201.070 (2) (West 2015); Vt. Stat. Ann. tit. 21, § 1301 (6) (C) (xxi) (2016); Va. Code Ann. § 60.2-219 (20) (Supp. 2017). In addition, three other states exempt certain individuals who are compensated primarily on the basis of commissions from their unemployment compensation laws. See Ohio Rev. Code Ann. § 4141.01 (B) (3) (g) (West Supp. 2017); Utah Code Ann. § 35A-4-205 (1) (p) (LexisNexis 2011); Wn. Rev. Code Ann. § 50.04.235 (West 2012). The amicus curiae contends that, in states without such statutes, direct sellers have been recognized as independent contractors under the common law "for decades." The only case addressing that question in Connecticut, however, is Electrolux Corp. v. Danaher , supra, 128 Conn. at 342, 23 A.2d 135, which, as we have explained, was decided before the legislature amended the act to include the ABC test. Other jurisdictions are split on the issue of whether a putative employee must actually be engaged in an independently established occupation to satisfy part C of the ABC test. It may well be that exempting direct sellers from the act, regardless of whether they are actually engaged in an independently established occupation, is the better public policy. As we have indicated, however, that policy judgment is one to be made by the legislature, not us.