# VOGUE *v.* ADMINISTRATOR, UNEMPLOYMENT
# COMPENSATION ACT
## (SC 20570)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

The plaintiff employer, V Co., appealed to the trial court from the decision
of the Employment Security Board of Review, which upheld the decision
of an appeals referee of the Employment Security Appeals Division that
a tattoo artist, S, was V Co.'s employee and that V Co. was liable under
the Unemployment Compensation Act (§ 31-222 et seq.) for contributions
to the state's unemployment compensation fund based on S's wages. V
Co. leased retail space in a shopping mall, where it sold body jewelry
and provided body piercing and body art services. Since 2013, S provided
tattoo services to the customers of V Co. from a back room on V Co.'s
premises. In 2016, the defendant, the administrator of the Unemployment
Compensation Act, audited V Co. and determined that S was V Co.'s
employee rather than an independent contractor, as V Co. had claimed.
The appeals referee sustained that decision classifying S as an employee,
finding, inter alia, that S did not pay rent to use the back room, S
performed tattoo services only during store hours, which were estab-
lished by V Co., and V Co. advertised on its website and Facebook page
that customers could receive tattoo services at its store. Thereafter, V
Co. appealed to the board of review, which concluded that V Co. had

Vogue *v.* Administrator, Unemployment Compensation Act

failed to satisfy any of the three prongs of the ABC test, as set forth in § 31-222 (a) (1) (B) (ii), which governs the determination of whether services performed by an individual constitute employment under the act. Specifically, the board of review determined that the tattoo services provided by S were performed within V Co.'s usual course of business, as required by part B of the ABC test, and noted that V Co. described itself on its website as a one-stop destination for piercing and tattoo services and that S was the only individual performing tattoo services for V Co. Thereafter, the trial court rendered judgment dismissing V Co.'s appeal from the decision of the board of review, concluding that V Co. had failed to prove that S was not an employee for purposes of the act. On appeal to the Appellate Court, that court found substantial evidence in the record to support the finding of the board of review that the provision of tattoo services was within V Co.'s usual course of business and concluded that the trial court had correctly determined that the board's application of the statute to the facts was neither unreasonable nor arbitrary. Accordingly, the Appellate Court affirmed the judgment of the trial court, and V Co., on the granting of certification, appealed to this court. *Held* that the Appellate Court correctly determined that the board of review had not acted unreasonably, arbitrarily, illegally, or in abuse of its discretion in finding that tattoo services were within V Co.'s usual course of business under part B of the ABC test, as there was substantial evidence in the record to support that finding: an activity is considered to be within an enterprise's usual course of business under part B of the ABC test when the enterprise performs the activity on a regular or continuous basis, without regard to the substantiality of the activity in relation to the enterprise's other business activities, and this court declined V Co.'s request to narrow the scope of the part B analysis by precluding consideration of the specific tasks performed by the worker for the putative employer; moreover, although advertisements are not by themselves dispositive of whether an activity is within an enterprise's usual course of business, the manner in which an enterprise holds itself out to the public, including through its advertising, may serve as substantial evidence of whether an activity is performed in the enterprise's usual course of business, and, in the present case, the record reflected that V Co. referred to itself on its website as a one-stop destination for piercing and tattoo services and used its store phone number as the number to contact for such services; furthermore, the board's finding that V Co. performed tattoo services on a regular or on a continuous basis was supported by additional evidence in the record, including evidence that tattoo services were provided only during V Co.'s store hours, V Co.'s owner previously had hired a tattoo artist and testified that he had included tattoo services as part of the business to increase revenue, and that all tattoo customers were required to execute a waiver with V Co. and would receive a receipt listing the name and contact information of V Co., rather than that of S.

Argued March 31—officially released August 16, 2022

Vogue *v.* Administrator, Unemployment Compensation Act

*Procedural History*

Appeal from the decision of the Employment Security Board of Review affirming the decision of an appeals referee of the Employment Security Appeals Division that the plaintiff was liable for certain unpaid unemployment compensation contributions, brought to the Superior Court in the judicial district of New London; thereafter, the Employment Security Board of Review denied in part the plaintiff's motion to correct; subsequently, the plaintiff filed an amended appeal with the trial court; thereafter, the court, *S. Murphy, J.*, affirmed the Employment Security Board of Review's denial in part of the plaintiff's motion to correct, granted the defendant's motion to dismiss and rendered judgment dismissing the appeal, from which the plaintiff appealed to the Appellate Court, *Bright, C. J.*, and *Cradle* and *Suarez, Js.*, which affirmed the judgment of the trial court, and the plaintiff, on the granting of certification, appealed to this court. *Affirmed.*

*Santa Mendoza*, for the appellant (plaintiff).

*Krista D. O'Brien*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Philip M. Schulz*, deputy associate attorney general, for the appellee (defendant).

*Opinion*

ROBINSON, C. J. This certified appeal requires us to consider whether the Board of Review of the Employment Security Appeals Division (board) correctly determined that tattoo services are part of the usual course of business of a body art and piercing business for purposes of part B of the statutory ABC test; see General Statutes § 31-222 (a) (1) (B) (ii) (II);[1] which is used to

[1] General Statutes § 31-222 (a) (1) (B) (ii) provides in relevant part: "Service performed by an individual shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the administrator that (I) such individual has been and will continue to be free from control and direction in connection with the performance of

Vogue *v.* Administrator, Unemployment Compensation Act

determine whether an individual is an employee for purposes of the Unemployment Compensation Act (act), § 31-222 et seq. The plaintiff, Vogue,[2] which is a business that provides body piercing and body art services, appeals, upon our grant of its petition for certification,[3] from the judgment of the Appellate Court affirming the judgment of the trial court rendered in favor of the defendant, the Administrator of the Unemployment Compensation Act, that dismissed its appeal from the decision of the board. *Vogue* v. *Administrator, Unemployment Compensation Act*, 202 Conn. App. 291, 314, 245 A.3d 464 (2021). On appeal, the plaintiff claims that the Appellate Court improperly upheld the trial court's determination that the board had not acted unreasonably or arbitrarily in holding the plaintiff liable for

such service, both under his contract for the performance of service and in fact; and (II) such service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and (III) such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed . . . .''

"This statutory provision is commonly referred to as the ABC test, with parts A, B and C corresponding to clauses I, II and III, respectively.'' (Internal quotation marks omitted.) *Southwest Appraisal Group, LLC* v. *Administrator, Unemployment Compensation Act*, 324 Conn. 822, 832, 155 A.3d 738 (2017).

[2] The record reflects that the plaintiff is a corporate entity known as Immortal Studios, LLC, doing business under the name Vogue. Although the plaintiff's appeal to the trial court was docketed only under the plaintiff's business name, it brought its administrative appeal to the trial court as Immortal Studios, LLC, doing business as Vogue, with subsequent appellate proceedings following suit. See *Vogue* v. *Administrator, Unemployment Compensation Act*, 202 Conn. App. 291, 293 n.1, 245 A.3d 464 (2021).

[3] We granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly affirm the trial court's judgment dismissing the plaintiff's appeal from the decision of the Board of Review of the Employment Security Appeals Division that the defendant had correctly determined that the plaintiff was liable for unpaid unemployment compensation contributions because an on-premises tattoo artist was an employee rather than an independent contractor under . . . § 31-222 (a) (1)?'' *Vogue* v. *Administrator, Unemployment Compensation Act*, 336 Conn. 918, 245 A.3d 802 (2021).

Vogue *v.* Administrator, Unemployment Compensation Act

unpaid unemployment compensation contributions on the basis of its conclusion that the offering of tattoo services was within the plaintiff's usual course of business. We disagree with the plaintiff and, accordingly, affirm the judgment of the Appellate Court.

The record reveals the following facts and procedural history, much of which is aptly set forth in the opinion of the Appellate Court.[4] "The plaintiff leases retail space in an indoor shopping mall in Waterford," where it "sells, among other things, body jewelry and body piercing services." Id., 294. In March, 2016, one of the defendant's field officers conducted an audit of the plaintiff's business and concluded that a tattoo artist, Mark Sapia, was an employee of the plaintiff rather than an independent contractor. Id. "Consequently, the defendant reclassified payments made to Sapia in 2014 and 2015 by the plaintiff as wages" and concluded that the plaintiff was liable for the payment of contributions under the act.[5] Id.

Subsequently, the plaintiff appealed from the defendant's decision to an appeals referee in its appeals division, who conducted an evidentiary hearing. Id. In a memorandum of decision issued in September, 2016, the appeals referee concluded that the defendant had correctly determined that Sapia was an employee of the plaintiff, on the basis of the following factual findings:

"(1) [Sapia] worked as a tattoo artist at [the plaintiff's store] from approximately 2013 through the time of the audit. Sapia himself personally performs the tattoo services for the customers at [the plaintiff's store]. The owner of [the plaintiff] classified Sapia as an indepen-

---

[4] The opinion of the Appellate Court sets forth an extensive recitation of the facts and procedural history of this case. See *Vogue* v. *Administrator, Unemployment Compensation Act*, supra, 202 Conn. App. 294–305. For the sake of brevity, we mention only the facts and procedural history relevant to the certified issue in this appeal.

[5] It is undisputed that Sapia has never filed a claim seeking unemployment insurance benefits under the act.

Vogue *v.* Administrator, Unemployment Compensation Act

dent contractor when the company was [completing] a registration form with the [defendant].

"(2) Based on that information, the [defendant] conducted an audit of [the plaintiff's business for 2014 and 2015] and checked its payroll records and the status of individuals working for [the business]. [The plaintiff] had four employees . . . not including the owner or [Sapia].

"(3) When Sapia began working for [the plaintiff], the parties agreed that, when [Sapia] tattooed the customer, Sapia would get 50 percent of the sales price and the owner would get the other 50 percent. Sapia was allowed to use the credit card machine for [the plaintiff's store] when selling his tattoo services. Sapia did not have to pay to use that credit card machine. The owner would then give Sapia his percent[age] of the credit card sales once those transactions were approved by the credit card company. [The plaintiff's store] had a back room . . . where Sapia was to perform his tattoo work on the customers. The price of the tattoo was determined by Sapia.

"(4) The owner also had Sapia sign an agreement when they started working together, which indicated that Sapia was an independent contractor, outlined the payment arrangements, and allowed the owner to review or check the work performed by Sapia. That agreement also stated that [Sapia] was responsible for correcting any mistakes with the tattoos and that [the plaintiff] could deduct moneys from Sapia if a customer complaint was not resolved.

"(5) Although the agreement also required that Sapia carry his own business liability insurance, Sapia did not do so, which the owner knew.

"(6) The owner provided Sapia with a sterile environment at the [plaintiff's] store . . . for him to perform

Vogue *v.* Administrator, Unemployment Compensation Act

his tattoo services for the general public. Sapia is registered with the state of Connecticut as a tattoo technician, and when he is placing the tattoos on the customers, he must do so in a sterile environment.

"(7) Sapia did provide his own ink and needles in order to place the tattoos on the customers he serviced at [the plaintiff's store]. Sapia also used his own laptop for his work.

"(8) [The plaintiff] keeps track of all of the tattoo sales made by Sapia when he is working in the store. When a customer paid for the tattoo in cash . . . Sapia would keep 50 percent of the sale for himself and turn over the other 50 percent to the owner. The owner did not pay any other moneys to Sapia in 2014 and 2015. Sapia . . . performed his tattoo services [only] during the store hours established by [the plaintiff] because the owner did not issue a store key to Sapia, who could not access the store on his own.

"(9) When Sapia sold a tattoo and applied the tattoo on the customer, the customer received a receipt, which listed the business name of the [plaintiff] company . . . as well as the phone number, address and website for [the plaintiff company] . . . . The [plaintiff's] owner also required that Sapia have the customers sign a waiver/release form, which was an agreement between [the plaintiff] and the customer, to release both [the plaintiff] and Sapia from various types of liability.

"(10) [The plaintiff] is in the business of providing piercings, selling jewelry for the piercing, and offering tattoo services. [The plaintiff] advertises through its website and its Facebook page that a customer can have piercings or tattoos done at its store and lists the hours that the tattoo artist is in the store.

"(11) [The plaintiff] provides a back room in the store where Sapia is able to perform his tattoo services for

Vogue *v.* Administrator, Unemployment Compensation Act

the customers of [the plaintiff]. [The plaintiff] also provides a table, chairs, and cleaning supplies for that room.

"(12) Sapia does not have to submit an invoice to [the plaintiff] in order to be paid his 50 percent of the tattoo services that he provides to the customers at [the plaintiff's store]. Sapia does not pay any rent to [the plaintiff] to use the employer's sterile room to perform his services, and all advertisements are done by [the plaintiff], other than [Sapia's] mentioning his tattoo services on his social media sites, which also include the contact information at [the plaintiff's store].

"(13) The [plaintiff's] owner was not aware of any insurance or other paperwork to show that Sapia had established his own business or that he had his own company [that] offered tattoo services to the general public.

"(14) When the field auditor [for the defendant] conducted the audit, the only income reported by Sapia was the moneys that he received from [the plaintiff]." (Internal quotation marks omitted.) Id., 294–97.

In September, 2016, the plaintiff appealed to the board from the decision of the appeals referee upholding the defendant's classification of Sapia as an employee. Id., 297. "In a memorandum of decision dated January 19, 2017, the board [relied on the record of the proceedings before the appeals referee and] expressly adopted [her] findings of fact . . . without modification, with the exception of the tenth finding of fact, to which the board added the following finding: 'Sapia is the only tattoo artist performing tattoo services for the [plaintiff].' " Id., 297. The board then upheld the decision of the appeals referee, determining that the plaintiff had not proven that Sapia was an independent contractor by satisfying all three prongs of the ABC test set forth

Vogue *v.* Administrator, Unemployment Compensation Act

in § 31-222 (a) (1) (B) (ii). See id., 298–99; see also
footnote 1 of this opinion.

"With respect to part B of the test," which is at issue in
this certified appeal, "the board concluded that Sapia's
service was not performed outside of the plaintiff's
usual course of . . . business or the place of its busi-
ness.[6] The board stated . . . the [plaintiff] describes
itself on its website as your one-stop destination for
body jewelry, stainless steel jewelry, as well as piercing
and tattoo services. The [plaintiff's] website also adver-
tised that it provided tattoo services during all open
store hours. [Although the board] recognize[s] that
Sapia was the only tattoo artist performing these ser-
vices on the employer's behalf, both the [plaintiff's]
website and Facebook page describe the company as
Vogue Tattoo and Piercings." (Footnote added; internal
quotation marks omitted.) *Vogue* v. *Administrator,*
*Unemployment Compensation Act,* supra, 202 Conn.
App. 299. "Accordingly, the board determined that Sapia
was employed by the plaintiff for purposes of the act
and that the plaintiff was liable for any contributions
related to his wages that were required by the act. The
board [upheld] the decision of the appeals referee and
dismissed the plaintiff's appeal." Id.

"In February, 2017, the plaintiff appealed from the
decision of the board to the trial court;" id.; see General
Statutes § 31-249b; Practice Book § 22-1 et seq.;
asserting that "several of the board's findings were not
supported by the evidence and that the board had mis-

---

[6] Under part B of the ABC test, an enterprise bears the burden of showing
that the services in question are "performed either outside the usual course
of the business" or are "performed outside of all the places of business of
the enterprise . . . ." General Statutes § 31-222 (a) (1) (B) (ii) (II); see *Vogue*
v. *Administrator, Unemployment Compensation Act,* supra, 202 Conn. App.
304. It is undisputed that tattoo services are performed on the premises of the
plaintiff's store. See *Vogue* v. *Administrator, Unemployment Compensation
Act,* supra, 311. Thus, we need not address the latter inquiry of part B.

Vogue *v.* Administrator, Unemployment Compensation Act

applied relevant legal principles to the facts of the case.''[7] *Vogue* v. *Administrator, Unemployment Compensation Act*, supra, 202 Conn. App. 300. Thereafter, the defendant filed a motion for judgment in his favor and an accompanying memorandum of law, arguing ''that the plaintiff had failed to prove that Sapia was not an employee for purposes of the act and that the board had correctly applied the law to the facts of the case,'' to which the plaintiff filed an objection. Id., 303. In April, 2019, after hearing argument on the defendant's motion for judgment and the plaintiff's objection thereto, the trial court rendered judgment for the defendant dismissing the administrative appeal.[8] Id.

The plaintiff then appealed from the trial court's judgment to the Appellate Court, asserting that the board incorrectly had interpreted and applied part B of the ABC test in determining that the provision of tattoo services was part of the plaintiff's usual course of business. See id., 305–306. The Appellate Court concluded that the board's construction of part B of the ABC test was neither previously subject to judicial scrutiny nor time-tested. See id., 308. Relying on this court's interpretation of part B in *Mattatuck Museum-Mattatuck Historical Society* v. *Administrator, Unemployment*

---

[7] In January, 2018, the plaintiff filed with the board a motion to correct fourteen of its findings, which it granted in part and denied in part. *Vogue* v. *Administrator, Unemployment Compensation Act*, supra, 202 Conn. App. 300. As the Appellate Court observed, the modified findings did not alter the board's conclusion that Sapia was an employee of the plaintiff. Id. In May, 2018, the plaintiff amended its administrative appeal to include claims related to the board's decision concerning that motion to correct, none of which relates to claims at issue in this certified appeal. Id., 303.

[8] Having rejected the plaintiff's argument that the board incorrectly determined that the plaintiff had failed to satisfy part B of the ABC test, the trial court deemed it unnecessary to consider parts A or C of the test. *Vogue* v. *Administrator, Unemployment Compensation Act*, supra, 202 Conn. App. 305. Similarly, the Appellate Court ''focus[ed] on the board's analysis under part B because that portion of the board's analysis [was] dispositive of the plaintiff's claim on appeal.'' Id., 298.

*Compensation Act*, 238 Conn. 273, 679 A.2d 347 (1996) (*Mattatuck Museum*), the Appellate Court concluded that the board had correctly interpreted the term ''usual course of business'' under § 31-222 (a) (1) (B) (ii) (II). See *Vogue* v. *Administrator, Unemployment Compensation Act*, supra, 202 Conn. App. 309–11. Moreover, the Appellate Court noted that the board expressly cited to and relied on the interpretation of part B in *Mattatuck Museum*. See id., 311. Finding substantial evidence in the record to support the board's finding that the provision of tattoo services was within the plaintiff's usual course of business, the Appellate Court further concluded that the trial court had correctly determined that the board's application of the statute to the facts was neither unreasonable nor arbitrary. See id., 311–14. Accordingly, the Appellate Court affirmed the judgment of the trial court. Id., 314. This certified appeal followed. See footnote 3 of this opinion.

On appeal to this court, the plaintiff claims that the Appellate Court improperly upheld the board's determination that the provision of tattoo services is within the plaintiff's usual course of business. The plaintiff contends that the board's interpretation of the term ''usual course of the business,'' as used in § 31-222 (a) (1) (B) (ii) (II), should not be accorded deference because it has not been subject to sufficient judicial or agency examination. Specifically, the plaintiff argues that the board based its decision on an overly broad interpretation of the statute and that, under this court's interpretation of the term in *Mattatuck Museum*, the plaintiff has satisfied part B of the ABC test because Sapia's activities were not performed by the plaintiff on a regular or continuous basis. The plaintiff also contends that *Mattatuck Museum* is inapplicable to the present case; it relies on former Chief Justice Rogers' dissenting opinion in *Standard Oil of Connecticut, Inc.* v. *Administrator, Unemployment Compensation Act*,

Vogue *v.* Administrator, Unemployment Compensation Act

320 Conn. 611, 665, 134 A.3d 581 (2016), for the proposition that, because Sapia is the only tattoo artist performing tattoo services for the plaintiff, the business itself does not perform tattoo services on the requisite regular or continuous basis as a matter of law. Finally, the plaintiff suggests that, in applying the ABC test, this court has adopted a totality of the circumstances test. Thus, the plaintiff contends that the Appellate Court improperly upheld the board's determination that part B of the ABC test was not satisfied because that finding relied solely on the wording of the plaintiff's advertisements to determine that tattoo services were within the plaintiff's usual course of business.[9]

[9] The plaintiff also argues that the board's decision improperly relied on additional facts beyond those found by the appeals referee, which provide the basis for the decisions of the board, the trial court, and the Appellate Court. We disagree. The board is not required to limit its decision to facts contained in the record of the hearing before the appeals referee; it similarly may modify the appeals referee's findings of fact or conclusions of law pursuant to General Statutes § 31-249. See *Seward* v. *Administrator, Unemployment Compensation Act,* 191 Conn. App. 578, 584, 215 A.3d 202 (2019) ("appeals are heard on the record of the hearing before the referee although the board may take additional evidence or testimony if justice so requires" (internal quotation marks omitted)).

The plaintiff also contends that the decisions of the trial court and the Appellate Court point to facts not found by the appeals referee or the board, namely, that (1) " '[t]he record reflects that the plaintiff had hired a tattoo artist prior to hiring Sapia and . . . [had] interviewed several candidates . . . before Sapia began [working] at the plaintiff's store,' " and (2) " '[t]he plaintiff's website also advertises tattoo services during all open store hours.' " *Vogue* v. *Administrator, Unemployment Compensation Act,* supra, 202 Conn. App. 304–305. In reviewing the decisions of administrative agencies, courts "determine whether there is substantial evidence *in the administrative record* to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Emphasis added; internal quotation marks omitted.) *Standard Oil of Connecticut, Inc.* v. *Administrator, Unemployment Compensation Act,* supra, 320 Conn. 622–23. We are unable to locate support in the record for the proposition that the plaintiff had previously interviewed several candidates before selecting Sapia as its resident tattoo artist. As we discuss subsequently in this opinion, however, sufficient other evidence in the record supports a finding that tattoo services are within the plaintiff's usual course of business. Moreover, the remaining disputed facts are supported by evidence in the record, namely, the transcript of testimony given at the hearing before the appeals referee and the field representative's report, which the appeals referee did

Vogue *v.* Administrator, Unemployment Compensation Act

In response, the defendant contends that the board's interpretation of "usual course of business" should receive traditional deference because it has been time-tested and is reasonable, insofar as the board has, for decades, consistently applied this court's construction of that term in *Mattatuck Museum-Mattatuck Historical Society* v. *Administrator, Unemployment Compensation Act*, supra, 238 Conn. 273. Alternatively, the defendant contends that the Appellate Court correctly determined that the board's conclusions that led to its finding that tattoo services were within the plaintiff's "usual course of business" were neither unreasonable nor arbitrary. We agree with the defendant and conclude that the Appellate Court correctly determined that the board had not acted unreasonably, arbitrarily, illegally, or in abuse of its discretion in finding that tattoo services were within the plaintiff's usual course of business under part B of the ABC test.

By way of background, it is well settled that, " '[f]or purposes of the act, "employment" is defined in part by . . . § 31-222 (a) (1) (B) (ii), which provides in relevant part that "[s]ervice performed by an individual shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the administrator that (I) such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract for the performance of service and in fact; and (II) such service is performed either outside the usual course of the business for which the service is performed or is

not specifically decline to credit. Additionally, the Appellate Court acknowledged that the plaintiff's website directed customers to call the plaintiff's business for Sapia's availability. See *Vogue* v. *Administrator, Unemployment Compensation Act*, supra, 311 n.10. Accordingly, the trial court and the Appellate Court properly considered these facts in determining whether the board's conclusions were reasonable.

Vogue *v.* Administrator, Unemployment Compensation Act

performed outside of all the places of business of the enterprise for which the service is performed; and (III) such individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed . . . .'' This statutory provision is commonly referred to as the ''ABC test,'' with parts A, B and C corresponding to clauses I, II and III, respectively. . . . This statutory provision is in the conjunctive. Accordingly, unless the party claiming the exception to the rule that service is employment shows that all three prongs of the test have been met, an employment relationship will be found.' '' *Southwest Appraisal Group, LLC* v. *Administrator, Unemployment Compensation Act*, 324 Conn. 822, 832, 155 A.3d 738 (2017).

The purpose of the act is ''to ameliorate the tragic consequences of unemployment'' and ''to guard against involuntary unemployment within the limitations prescribed.'' (Internal quotation marks omitted.) *Furber* v. *Administrator, Unemployment Compensation Act*, 164 Conn. 446, 454, 324 A.2d 254 (1973). The legislature expressly mandated that the act shall be construed, interpreted, and administered in such a manner as to presume coverage, eligibility, and nondisqualification in doubtful cases. *Kirby of Norwich* v. *Administrator, Unemployment Compensation Act*, 328 Conn. 38, 48, 176 A.3d 1180 (2018); see General Statutes § 31-274 (c). Accordingly, exemptions to coverage under the act are strictly construed. *Kirby of Norwich* v. *Administrator, Unemployment Compensation Act*, supra, 48. Nevertheless, in applying the ABC test, we must be careful not to hamper ''those who undertake to do business together as independent contracting parties . . . on a legitimate basis.'' (Internal quotation marks omitted.) *Southwest Appraisal Group, LLC* v. *Administrator, Unemployment Compensation Act*, supra, 324 Conn. 834.

Vogue *v.* Administrator, Unemployment Compensation Act

With respect to the standard of review, it is well established that "[r]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Internal quotation marks omitted.) *Standard Oil of Connecticut, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, 320 Conn. 622–23. Neither the trial court, the Appellate Court, nor this court "may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts." (Internal quotation marks omitted.) Id., 623.

Beyond the deference that we give to an administrative agency's factual determinations, our review of the board's construction of the ABC test, as set forth in § 31-222 (a) (1) (B) (ii), "presents a question of law [over which our review is plenary]. . . . Although [o]ur review of an agency's decision on questions of law is limited by the traditional deference that we have accorded to that agency's interpretation of the acts [that] it is charged with enforcing . . . [i]t is well settled . . . that we do not defer to the board's construction of a statute . . . when . . . the [provision] at issue previously ha[s] not been subjected to judicial scrutiny or when the board's interpretation has not been [time-tested]." (Citations omitted; internal quotation marks omitted.) *Kirby of Norwich* v. *Administrator, Unemployment Compensation Act*, supra, 328 Conn. 47. To the extent we do "accord great weight and deference to previous agency interpretations of a statute," we

Vogue *v.* Administrator, Unemployment Compensation Act

do so only "when they are time-tested and reasonable." (Internal quotation marks omitted.) *Southwest Appraisal Group, LLC* v. *Administrator, Unemployment Compensation Act*, supra, 324 Conn. 833.

As a threshold matter, the parties appear to disagree about whether the Appellate Court correctly determined that the board's construction of the term "usual course of business" is not subject to judicial deference because it has *not* been time-tested or subject to judicial scrutiny, within the factual scenario presented by this case. See *Vogue* v. *Administrator, Unemployment Compensation Act*, supra, 202 Conn. App. 308 and n.9 (describing parties' arguments before Appellate Court with respect to judicial deference). In our view, the Appellate Court's treatment of this issue was somewhat unclear insofar as it appeared to extend plenary review to the board's interpretation of the ABC test; see id., 308–10; while applying a more deferential analysis as it assessed the reasonableness of the board's ultimate conclusion on the facts of this case. See id., 311–14. In our view, this case squarely presents a question of reasonableness, rather than one of statutory construction subject to plenary review. Resolution of which activities fall outside of a plaintiff's "usual course of business" under the ABC test required this court to construe that phrase in 1996, when it decided *Mattatuck Museum-Mattatuck Historical Society* v. *Administrator, Unemployment Compensation Act*, supra, 238 Conn. 278. In the present case, the board did not, however, provide its own "time-tested" construction of the phrase "usual course of business" that would implicate potential concerns about judicial deference. Rather, it applied this court's interpretation of that phrase in *Mattatuck Museum* to the facts of this case, as it has consistently and expressly done in its decisions since 1997.[10] Therefore, we review

[10] See *Provost* v. *CMIT Solutions of Hartford*, No. 9015-BR-19 (December 31, 2019) (Decisions of Employment Security Board of Review) (because claimant was performing service that appellant offered to clients, such

Vogue *v.* Administrator, Unemployment Compensation Act

only the board's application of the usual course of business analysis to the facts of this case to determine whether it was unreasonable or arbitrary, insofar as it has not provided an interpretation of that phrase that differs from that articulated in *Mattatuck Museum* but has merely applied that precedent to the facts of this case. See, e.g., *Standard Oil of Connecticut, Inc.* v. *Administrator, Unemployment Compensation Act,* supra, 320 Conn. 622–23.

In *Mattatuck Museum-Mattatuck Historical Society* v. *Administrator, Unemployment Compensation Act,* supra, 238 Conn. 278–82, this court interpreted and defined the phrase "usual course of business," as used in the act's ABC test. In determining whether a particular activity is considered within an enterprise's "usual course of business" under part B of the ABC test, we consider whether "the enterprise performs the activity on a regular or continuous basis, without regard to the substantiality of the activity in relation to the enter-

---

services were not performed outside of appellant's usual course of business); *Torrison Stone & Garden, LLC,* v. *Administrator,* No. 9001-BR-15 (July 2, 2015) (Decisions of Employment Security Board of Review) (appellant offered masonry services on regular and continuous basis, held itself out to public as offering these services, and workers were masons); *King's Speech & Learning Center* v. *Administrator,* No. 9000-BR-15 (June 2, 2015) (Decisions of Employment Security Board of Review) (appellant held itself out to public on website as providing services in question, rather than simply connecting clients and therapists); *Administrator* v. *Hoffman Educational Group, LLC,* No. 9006-BR-12 (August 26, 2013) (Decisions of Employment Security Board of Review) (appellant satisfied part B because it did not hold itself out to public as tutoring service, and specific business activities did not include tutoring students, but it matched students with tutors); *Administrator* v. *JMF Speech & Language Services, Inc.,* No. 9005-BR-12 (January 24, 2013) (Decisions of Employment Security Board of Review) (appellant described itself as providing speech and language services to clients, provided these services on regular basis through therapists, and president provided same services); *Administrator* v. *Northern Connecticut Eye Associates,* No. 9013-BR-97 (September 22, 1997) (Decisions of Employment Security Board of Review) (doctor provided ophthalmologic services, which were specific business activities engaged in by enterprise in usual course of business).

Vogue *v.* Administrator, Unemployment Compensation Act

prise's other business activities.''[11] Id., 281. In doing so, this court examined the particular activities that the plaintiff, a museum, engaged in and concluded that the offering of art courses was within the plaintiff's ''usual course of business'' because the plaintiff had employed instructors to teach art courses for several years, held itself out to the public as offering art courses, and produced and distributed brochures announcing courses, class hours, location, registration fees, and instructors' names. See id., 279–82.

Neither party has asked this court to overrule or limit *Mattatuck Museum*. However, the plaintiff relies on former Chief Justice Rogers' dissenting opinion in *Standard Oil of Connecticut, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, 320 Conn. 665, for the proposition that the usual course of business test requires some analysis as to whether the enterprise performs the activity regularly and continuously, without consideration of the specific tasks performed for the employer by the worker at issue in the case.[12] We

_____

[11] Other jurisdictions have also followed *Mattatuck Museum* in defining the term ''usual course of business'' under their respective unemployment compensation statutes. See *Vazquez* v. *Jan-Pro Franchising International, Inc.*, 986 F.3d 1106, 1125 (9th Cir. 2021) (courts have framed prong B inquiry in several ways, including whether work of employee is continuously performed for hiring entity and which business hiring entity proclaims to be in, all of which should be considered); *Q.D.-A., Inc.* v. *Indiana Dept. of Workforce Development*, 114 N.E.3d 840, 847 (Ind. 2019) (''if a company regularly or continually performs an activity, no matter the scale, it is part of the company's usual course of business''); *Appeal of Niadni, Inc.*, 166 N.H. 256, 261, 93 A.3d 728 (2014) (''[w]e find the [Connecticut] Supreme [Court's] . . . approach [in *Mattatuck Museum*] most useful'').

[12] The plaintiff also contends that the Appellate Court's opinion refers to tattooing as an ''integral'' part of the plaintiff's business. This court has not adopted the interpretation of part B that turns on whether the services provided by the worker were integral or necessary to the activities undertaken by the plaintiff. See, e.g., *Carpetland U.S.A., Inc.* v. *Illinois Dept. of Employment Security*, 201 Ill. 2d 351, 386, 776 N.E.2d 166 (2002) (''the key to [the usual course of business] inquiry is whether the services are necessary to the business of the employing unit or merely incidental''); *Sebago* v. *Boston Cab Dispatch, Inc.*, 471 Mass. 321, 333, 28 N.E.3d 1139 (2015) (''[a]nother factor is whether the service the individual is performing is

Vogue *v.* Administrator, Unemployment Compensation Act

disagree with this argument. First, a part B standard that depends on the number of workers performing a task for an enterprise is inconsistent with both former Chief Justice Rogers' dissenting opinion in *Standard Oil of Connecticut, Inc.*, when considered in its complete context, and *Mattatuck Museum* itself, and would frustrate the fact sensitive nature of the usual course of business analysis. In *Mattatuck Museum*, the enterprise offered art courses to the public on a regular and continuous basis, employed instructors to teach art courses, produced and distributed brochures announcing art course information, listing the teacher at issue as "faculty," and discounted art courses to bolster its membership. See *Mattatuck Museum-Mattatuck Historical Society* v. *Administrator, Unemployment Compensation Act*, supra, 238 Conn. 282. Even if the museum in *Mattatuck Museum* utilized only one teacher for its art courses, the analysis in that case results in the same conclusion. Likewise, in her dissenting opinion in *Standard Oil of Connecticut, Inc.*, former Chief Justice Rogers specifically rejected an approach that would enable an enterprise to contract out the entirety of its workforce, while claiming that not one of the contract workers was an employee because no one on the payroll was performing the same tasks as the enterprise. See

necessary to the business of the employing unit or merely incidental" (internal quotation marks omitted)). The Appellate Court, however, correctly concluded that substantial evidence exists in the record for the board to have determined that the provision of tattoo services was within the plaintiff's usual course of business, as defined by *Mattatuck Museum*, which examines whether an enterprise performs an activity on a regular or continuous basis. See *Mattatuck Museum-Mattatuck Historical Society* v. *Administrator, Unemployment Compensation Act*, supra, 238 Conn. 281.

Further, the plaintiff suggests that, in applying the ABC test, this court has adopted a totality of the circumstances test. We disagree. The totality of the circumstances analysis governs only part C of the ABC test. See *Southwest Appraisal Group, LLC* v. *Administrator, Unemployment Compensation Act*, supra, 324 Conn. 837–38 ("part C must be considered in relation to the totality of the circumstances, with that inquiry guided by a multifactor test"). Part B has no such multifactor test.

Vogue *v.* Administrator, Unemployment Compensation Act

*Standard Oil of Connecticut, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, 669 n.6 (*Rogers, C. J.*, dissenting). Accordingly, we decline the plaintiff's request to narrow the scope of the *Mattatuck Museum* analysis away from the actual activities of the putative employer.

We therefore turn to whether the Appellate Court correctly concluded that the board had not acted unreasonably, arbitrarily, illegally, or in abuse of its discretion in applying its "usual course of business" analysis to the plaintiff's relationship with Sapia. The plaintiff contends that the Appellate Court improperly upheld the board's determination that part B of the ABC test was not satisfied because it relied solely on the wording of the plaintiff's website and social media advertisements in determining that tattoo services were within its usual course of business.

We agree with the plaintiff's argument that advertisements are not *by themselves* dispositive of whether an activity is within an enterprise's usual course of business.[13] Nevertheless, how an enterprise holds itself out to the public—which may be evidenced by its advertising—may be used as substantial evidence of whether an activity is performed in its usual course of business.[14]

---

[13] We also agree with the plaintiff's assertion that the court in *Mattatuck Museum* declined to take the broadly held position that, "if you do it, it is within your usual course of business." (Internal quotation marks omitted.) *Mattatuck Museum-Mattatuck Historical Society* v. *Administrator, Unemployment Compensation Act*, supra, 238 Conn. 279. As described previously in this opinion, the correct standard is whether the plaintiff regularly or continuously performs an activity. See id., 280.

[14] Similarly, other jurisdictions have relied on evidence of how an enterprise holds itself out to the public in its advertising in determining whether a particular activity is in its usual course of business. See *Jori Enterprises, LLC* v. *Director, Dept. of Workforce Services*, 474 S.W.3d 910, 914 (Ark. App. 2015) (enterprise "proudly offer[ed] one-on-one in-home tutoring," and, therefore, people could believe from advertisement that enterprise was tutoring service); *McPherson Timberlands, Inc.* v. *Unemployment Ins. Commission*, 714 A.2d 818, 822 (Me. 1998) (enterprise advertised interest in buying timber from other landowners and held itself out as harvester and

Vogue *v.* Administrator, Unemployment Compensation Act

See *Standard Oil of Connecticut, Inc.* v. *Administrator, Unemployment Compensation Act*, supra, 320 Conn. 666, 669 (*Rogers, C. J.*, dissenting) (emphasizing that, under governing law, courts are directed to consider services that *enterprise itself* offers to the public and performs, which may include evidence of promotional materials); *Q.D.-A., Inc.* v. *Indiana Dept. of Workforce Development*, 114 N.E.3d 840, 847–48 (Ind. 2019) ("[A]dvertising can reflect services a company offers to its customers. But we cannot uncritically rely on that advertising to fully reflect the activities a company regularly or continually performs."). Moreover, when an enterprise is a new venture of an established business, whether it holds itself out to the public as performing the activity may indicate whether the activity is in its usual course of business. See *Mattatuck Museum-Mattatuck Historical Society* v. *Administrator, Unemployment Compensation Act*, supra, 238 Conn. 280 n.9. In the present case, the record reflects that the home page of the plaintiff's website stated, "Tattoo and Piercings" and "Welcome to Vogue, your one-stop destination for body jewelry, as well as piercing and tattoo services." (Internal quotation marks omitted.) The phone number listed for tattoo services was the plaintiff's store phone number.

Additional evidence in the record beyond the online advertisements supports the board's finding that the plaintiff performed tattoo services on a regular or continuous basis. Tattoo services were provided at the

marketer of timber); *Athol Daily News* v. *Board of Review of Division of Employment & Training*, 439 Mass. 171, 179, 786 N.E.2d 365 (2003) (when enterprise defined "its business as 'publishing and distributing' a daily newspaper," carriers' services were performed within usual course of business); *Appeal of Niadni, Inc.*, 166 N.H. 256, 263, 93 A.3d 728 (2014) (record included several advertisements featuring workers' likeness and information); *Great Northern Construction, Inc.* v. *Dept. of Labor*, 204 Vt. 1, 12, 161 A.3d 1207 (2016) (factors relevant to part B determination include "how the purported employer defines its own business").

Vogue *v.* Administrator, Unemployment Compensation Act

plaintiff's store only during its store hours. The plaintiff's owner previously had hired a tattoo artist. The plaintiff's owner testified that it was his decision to have tattoo work become part of the business, in addition to retail jewelry piercing and sales, to increase revenue. The field representative's report describes a required waiver form between the plaintiff and all tattoo customers. Indeed, after purchasing tattoo services, customers received a receipt with the plaintiff's name and contact information, rather than Sapia's. As the Appellate Court noted, the board and the trial court decisions reflected a review of the entire record. See *Vogue* v. *Administrator, Unemployment Compensation Act,* supra, 202 Conn. App. 313. Likewise, the board's consideration of how the plaintiff held itself out to the public is consistent with its application of *Mattatuck Museum* in other decisions.[15] See footnote 10 of this opinion.

For these reasons, it was not unreasonable or arbitrary for the board to conclude that the plaintiff regularly and continuously provided *both* body piercing and tattoo services for purposes of part B of the ABC test.

[15] The plaintiff raises additional facts in support of its contention that the ABC test is satisfied, such as Sapia's freedom to make his own hours during the plaintiff's open store hours, to keep his own appointment book, to set his own prices, to advertise his own clientele on his social media, and to store his intellectual property on his personal computer. However, these facts are not relevant to our part B analysis pursuant to *Mattatuck Museum*, which does not examine the activities of the worker at issue but, rather, focuses on the enterprise. See *Mattatuck Museum-Mattatuck Historical Society* v. *Administrator, Unemployment Compensation Act,* supra, 238 Conn. 279 (with respect to prong B, "we examine the particular activities engaged in by the [employer]"). Accordingly, because the ABC test is conjunctive, requiring the employer to prove each prong, we need not address the merits of parts A and C of the test analyzing the plaintiff's control over Sapia or Sapia's independently established business. See, e.g., *Southwest Appraisal Group, LLC* v. *Administrator, Unemployment Compensation Act,* supra, 324 Conn. 832 ("unless the party claiming the exception to the rule that service is employment shows that all three prongs of the test have been met, an employment relationship will be found" (internal quotation marks omitted)).

See *Standard Oil of Connecticut, Inc.* v. *Administrator, Unemployment Compensation Act,* supra, 320 Conn. 665 (*Rogers, C. J.,* dissenting) ("[a]n activity need not comprise the majority of an enterprise's business or its primary line of work in order to be within the enterprise's usual course of business, as long as it is performed with the requisite frequency"); *Q.D.-A., Inc.* v. *Indiana Dept. of Workforce Development,* supra, 114 N.E.3d 847 (adopting *Mattatuck Museum*'s definition and concluding that, "if a company regularly or continually performs activities showing it is engaged in various separate and independent kinds of businesses or occupations, it may have more than one course of business" (internal quotation marks omitted)). Because substantial evidence existed to support the board's determination that tattoo services were within the plaintiff's "usual course of business," the Appellate Court properly affirmed the judgment of the trial court dismissing the plaintiff's administrative appeal.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

————————————